Mr. Brignac whenever you're ready. Thank you, Judge Traxler. Good morning. May it please the court, Eric Brignac for Mr. Parral-Dominguez. The conviction that Mr. Parral-Dominguez had for discharging a firearm into an occupied building in North Carolina was not a crime of violence for purposes of the illegal re-entry guideline. Accordingly, the district court committed significant procedural error, infected these sentencing proceedings, and this case should be remanded with instructions to resentence Mr. Parral-Dominguez without application of the guideline. The North Carolina statute has no requirement that the bullet hit or come near a person. It has no requirement that the victim ever become aware, not even really the victim, anyone in the building ever be aware that a firearm was ever discharged, and it does not require any intent or knowledge on the person discharging the gun that the building was actually occupied. I thought the North Carolina Supreme Court reformulated to say that knowledge, but knowledge was not is what you said. Yes, knowledge is not. It's a negligence, recklessness, it's you know that you should have suspected the building might be occupied. Under the plain language of the North Carolina statute as interpreted multiple times by the North Carolina courts, there's no force, there's no threat of force, there's no attempted force against the person of another. If I knew somebody was in the building, but I intentionally shot to a part of the building where I knew they weren't, would I be guilty of the North Carolina offense? Yes, your knew there was someone in the very top floor and you shot a gun into the corner of the building, you'd be guilty. If it were, if you're out in the country and it was a large barn and there was a target on the side of it and some of your friends were in the far part of the barn, you know, doing something in the hayloft and you're like, hey, let's start target shooting. You're shooting the side. You know, you're guilty of the crime. It's risky behavior. We don't like people discharging firearms, but even to take your example again, Chief Judge Traxler, even if a reasonable person should have thought, well, there may or may not be someone in that building, there might be someone in that building, and you shot the gun, you would be guilty of that crime, even though categorically you in no way threatened, attempted, or used force against the person of another. What's your best argument against the Seventh Circuit's view of these issues, WOMAC in particular? WOMAC in particular, well, WOMAC, Your Honor, relies in large part on Curtis. And so first, just to say WOMAC was a case that did involve career offender, and I understand it didn't rely on the residual clause, but that statute, that definition of crime of violence, which again, involves property, involves risk. WOMAC didn't even mention Jaimez Jaimez. Curtis, which is the other Seventh Circuit case that in some ways you could say comes out against us, actually made a distinction, tried to distinguish Jaimez Jaimez. I don't think it particularly did a great job, but its distinction, it made two primary distinctions. It said, well, first, in this case, you know, a person should have known there was a person in the building under this statute, but in Jaimez Jaimez, you know, the only standard was that someone might have known there was a person in the building. Now, in all honesty, to me those both sound like recklessness, but to the extent the Seventh Circuit and Curtis was making that distinction, the North Carolina courts have used that same building might be occupied language. Curtis also, again, Seventh Circuit case, talks about how vehicles as a class, that's their language, vehicles as a class are generally much smaller than buildings. So if it were definitely a vehicle, if this were some sort, if we could use the modified categorical approach or it were a separate statute for vehicles, you could at least try and build an argument that, well, but vehicles so small, it's hard to see how the occupant couldn't be aware, even if it isn't an element of the statute. Definitely not the case here. And, Your Honor, to the extent the crimes of violence, the Duenas-Alvarez decision of the Supreme Court indicates you can always imagine hypotheticals, such as a hugely large building and shoot in one wing, the occupant may be in another wing, although I think it's often hard to know exactly where an occupant is. You can always imagine hypotheticals that are outside the heartland of the crime, but the Supreme Court opinion in Duenas-Alvarez said the most likely application of the statute is in the great majority of cases. What do you think the most likely application of the statute is in the this application where the person is not prosecuted as a Class C felony for injuring a person? I think that the heartland case is this sort of nuisance crime where somebody is recklessly shooting at a building. North Carolina is a very rural state and firearms are very prevalent and this is risky behavior that the state rightly classifies as a Class E felony. Now, Your Honor, of course, many instances in which a firearm is discharged and a person's around, you know, that could encompass this behavior, but there are plenty of statutes under which the person would more likely be prosecuted if they were threatening a person, attempted murder, assault, the aggravated version of this statute. So I do think that it's not fanciful or hypothetical that we're just looking at these cases where someone shoots at a building and a person isn't threatened and a person isn't assaulted and a person isn't hurt because that's what this statute covers. This is a Class E felony. The felony because it's risky, dangerous behavior, but again, it's not the Class C felony, it's not the Class A, B, C more serious felonies. You yourself said that this is very risky behavior, which may understate the point from the standpoint of someone who is actually occupying the building when the thing is shot. Regardless of whether this is a crime of violence or not, it's still a very serious offense. Oh, and Your Honor, we do not dispute that. I think the Fifth Circuit in Calderontania acknowledged that. You know, they had the case of felony child neglect, which is, of course, about, you know, I think on the short list of some of the most horrific crimes you can think of, you know, allowing harm to come to a child, but as horrific as the crime was, it did not involve- But let's just say, let's just say, arguendo, we accept your view that it's not a crime of violence and sort of depart from the Second and Seventh Circuit on that point. The District Court would be able to consider on remand the fact that this was a crime of prior behavior, and the District Court wouldn't be bound by a crime of violence categorical approach, but the District Court could go into the facts of the particular predicate offense if it's so wanted on resentencing. Yeah, Your Honor, just quickly, I would just, I know that wasn't your question, but I would say reading Curtis and Jaimez-Jaimez together, I would not say this Court would be departing at all from the Seventh Circuit to hold that, but to get to your question, at sentencing, the District Court can consider any and everything under 3553A, and if the District Court were to, for instance, fashion in any case an upward or downward variance based on the facts. But the District Court could go into the particular facts under 3553A. Under 3553A. So the guideline would need to be properly calculated, and any sentence outside of that range, Your Honor, would have to be substantively reasonable and have to be justified. I understand all that, but granted that we would be free, and the District Court would be free to go into the facts of the predicate offense upon remand, because it wouldn't be bound by the crime of violence. What were the facts here, do you know? Your Honor, I do not think we know. I know in the government's brief they put in the charging document. I did not believe that was part of the record. The District Court itself acknowledges in its written opinion that the charging documents, the plea colloquy, none of that was part of the record. So I hesitate to say exactly what happened. Based on the government's, I believe it was the police report, it may have been the charging document, I'm sure Ms. Fritz will fill you in, he discharged a weapon into a building where a woman was. There was a woman in the building, and I believe it was possibly his girlfriend, and he discharged a firearm into that building, which again is not behavior we're excusing or condoning, but this is exactly why the Sixth Amendment has us perform a categorical approach, because obviously standing up here on appeal, looking at a charging document that wasn't part of the District Court record trying to figure out what he did, again, that may be very valid in terms of a sentencing argument by the government, in terms of the nature and characteristics of the defendant and his history. That's not at all where we are here. We're applying the categorical approach, looking at the elements of this statute, and again, the North Carolina courts are clear. State v. Messick, it's not an assault. State v. Kennedy, no intent for the destination of the bullet. So again, that's a general intent as to where the bullet even ends up. State v. Everett, no knowledge that the building be occupied. Yes, sir. We may not be talking about the same thing. I mean, the question I have is that this crime was, we all agree, is bad behavior and risky behavior. And in fact, in many cities, it's a common technique of gang warfare just to be shooting into occupied buildings as a method of firing a shot across the bow or intimidating someone. But Judge Flanagan said that this is the only sentence that would do. And then she ticks off in a very careful sentencing proceeding all the different reasons why she's giving the sentence that she's giving. So what possible difference is it going to make? You may spin scenarios for me where Judge Flanagan, oh, would do this if she only knew this. But when you read the sentencing that sends the message, this defendant will be punished for his actions and his conduct. His dangerousness must be mitigated. He must respect the law. And there's a number of factors that she, that form the basis of those comments. I don't know why we need to get into whether this is technically a crime of violence or not, given the statements that she made and the reasons that she provided for those statements in the sentencing procedure. We're going to arrive right back. I can tell you, given this record, that the chance that she's going to impose a different sentence is going to be very slight. Your Honor, I will not spin scenarios for you. I will say, first, the guideline mistake, the improper guideline calculation, infected the entire proceeding. After the judge miscalculated the guideline, Mr. Pearl Dominguez's attorney asked for a 38-month sentence, which was an upward variance from where the guideline should have been. So it changed the entire sentencing proceeding. Well, do you think it's a coincidence that the sentence imposed fell in the middle of the guideline? No. As calculated? No, Your Honor. I think that she felt that this, that that guideline range was appropriate, that there was no reason to necessarily upward or downwardly vary from the range. She went right into the middle of the range. And Judge Flanagan, like all the district judges, is very aware of Hargrove, is very aware of Selvio Matute, is very aware of this court's assumed harmless error review. And in her entire oral pronouncement from the bench, in her written order, and in her statement of reasons, never indicated that we had this guideline dispute. And notwithstanding this dispute, I think I'm correct. But even if I'm not, I would impose the same sentence. And I know she doesn't need to say those exact words, but the fact that she imposed a sentence in the middle of the guideline range, the fact that the sentencing proceeding was so infected that his own attorney was asking for a sentence above what the range should have been, and the fact that Judge Flanagan never said that, and the fact that she spent so much time and attention on this issue. But what changes here, because you've got, she put a lot of emphasis on the fact that this was the age at which this criminal activity occurred, 26 or 29 years of age. And she said, you know, that's an age where you're committing these crimes that are well beyond adolescence. You were caught with a substantial amount of cocaine. You were giving aliences to law enforcement officers. There were disciplinary infractions incurred while in customers, while in custody. You were a documented member of this street gang. You've demonstrated a consistent disregard for the personal rights and safety of others. You've been given lenient treatment in the past. And the prior lenient treatment had had no effect whatsoever. Now, you know, none of this, none of this changes. And those were factors that drove the sentence. And then she concludes, it's only a sentence of 65 months that sends the message. And those are very strong words. I see my light's on. May I answer yes? Your Honor, I would only say everything you said is a factor that Judge Flanagan may consider at sentencing. She did. Judge Flanagan should have the right to consider those factors in the context of a properly I-53A factor that she considered. So one of the factors she considered, the guideline range, was wrong. And not just wrong, over double what it should have been. So it is not up to this court to sentence Mr. Perel Dominguez. It is up to Judge Flanagan. But that line of argument simply really undercuts our harmless error analysis and salvage normitude and many other cases where there's been a very careful canvas of a sentence under the I-3553A factors. And where at the conclusion of that very careful canvas, the district court says, you've got lenient treatment in the past. Things have only gotten worse. All along this trail, there are things that have present an unmodified trail of criminal activity. And it's only this sentence that's finally going to send the message. And that's the only way I can read the sentence, which says, I think it's only a sentence of 65 months that sends a message the defendant will be And Your Honor, if I may, she never indicated that she would, unlike Selvia Matute, unlike Hargrove, unlike the cases you speak of, never indicated that even if I got this wrong, I would impose the same sentence. And yet this court We've never required those kind of magic words. But they're a very useful factor to consider. The burden, there needs to be proof that the same It's harmless error. It's not Mr. Perel Dominguez's burden to show he should have gotten a different sentence. I think Montez Flores from this court really lays that out. I see my time is up. Thank you, Your Honor. You've got some time remaining. Thank you. Ms. Fritz. May it please the court. Christine Fritz on behalf of the United States asking this court to affirm the judgment of the district court. Common sense tells us that this North Carolina statute exists to protect people. This is not about property. It is about punishing those who unleash deadly force into an occupied structure, knowing or having reason to believe that that structure might be occupied. The North Carolina Supreme Court has stated in Williams and in other cases that this statute was enacted to protect people. The placement of the statute in the scheme of North Carolina statutes only reinforces that. It is in the offenses against persons section. It is in the assault chapter, and while I agree that it doesn't have that technical element of assault, that placement is certainly informative. Although the defendant... Common sense is not an element of this crime. No. So you look just at the elements, don't you? Yes. In looking at the elements here, this case is far more like the Illinois statute that's been considered repeatedly in the Seventh Circuit. Because although the statute as drafted and as it appears in the statute books doesn't have a knowledge requirement, the North Carolina Supreme Court has stated that there is a knowledge requirement here. That the defendant must know or have reason to believe that the building is occupied. When you are shooting into an occupied building, knowing or having reason to believe that it's occupied, you are sufficiently using, attempting to use, or threatening the use of force against a person. And the cases, if you look at the North Carolina cases for the last three decades, they bear that out. It's a clear picture of violent force being unleashed into an occupied structure. When you look at the cases, there is nothing like the hypotheticals suggested by the defendant. There is no 20-story building with someone who happens to be on the top floor. There is no shooting at some rural barn. When you read those cases, you see individuals, defendants, who have shot into homes, trailers, bars, cars, restaurants. And they've done so under circumstances where they absolutely knew or they had every reason to believe that those structures were, in fact, occupied. Now, in preparing for this oral argument, I did look, as I'm sure the defense counsel did, at the language that the word might, that there is reason to believe that the structure might be occupied. And in application, and as that is used, that is certainly the terminology that the North Carolina Supreme Court has adopted. But when you look at the cases, the application of that is a recklessness standard, that you had reason to believe that it was, in fact, occupied. For example, in the case of Everett, which I believe is discussed in the briefs, it was a situation where a defendant was hanging out of a sunroof shooting at officers in a busy Greenville area. And the bullet struck, among other things, a car. And they shot into a bar, or the Flying Salsa, which I understand. Your opponent makes the argument that where you're actually shooting at somebody in an attempt to kill them or whatever, that there are other statutes with which they could be charged, that you don't need this particular statute because you have so many other statutes with which you could charge them. What do you say with respect to that? I would say that the North Carolina legislature enacted this statute for a reason. In many of the cases that I've read, there are accompanying charges, whether it's felony murder, assault with a deadly weapon, intent to kill. It's accompanied with the discharging of a firearm into an occupied structure. And my response is that this crime is targeting that use of violence, that use of force, under circumstances where the use of force is sufficiently against the person of another. Because you have the occupied structure, and you have that knowledge requirement, and you have intentional conduct. Now, also interesting about the North Carolina cases is that North Carolina allows this to be a predicate offense for felony murder, which they tend to be those other felonies that are inherently dangerous to life. Similarly, in State v. Brown, which is a 1987 North Carolina Supreme Court case, Citation 358, Southeast Second First, the North Carolina Supreme Court said that it was appropriate to enhance the defendant's sentence as a habitual offender, relying on a conviction for violating the discharging of statute, discharging a firearm into an occupied building. And in such a circumstance, to be an appropriate predicate, it has to be a serious and memorable offense that involved the use or threat of violence to the person. North Carolina Supreme Court cases treat this as an offense that criminalizes the use or attempted use or threatened use of force against a person. In this court, and the Supreme Court has... Is that what was charged here? Against a person? No. So, you don't believe that we should treat this as a categorical offense? Or do you? I think that given the fact that the statute does have multiple subsections, it's appropriate to this court to want to divide them. But our argument is that categorically, this offense does sufficiently have the against the person requirement built in because of the elements of the offense, because of the intentional conduct required, because there's an actual occupancy requirement. But if you wrote those elements on the blackboard over here, your argument wouldn't match up to that, would it? If we actually wrote each one of the elements, it wouldn't match up to your argument? My argument would be that it's inherently, when you look at those elements, that it's inherently that there is the user... Well, inherently is not an element either. If you just take the elements of the crime charge, then your argument doesn't match up to that, does it? I don't know if I disagree. I mean, I don't know if I agree with your... Well, to get there, you've got the argument that inherently, in common sense and other things, you want to change the elements of the statute. No, what I'm asking this court to do is to look at the North Carolina Supreme Court cases that are interpreting and applying the statute. And when you look at those cases, it becomes clear that that is an inherent part of the offense, the use, attempted use, or threatened use of violence against the person. When you have the force, again, being used against an occupant, you're firing into an occupied structure when you know or have reason to believe that that structure is occupied, that that is sufficient to meet the force requirement in this case. Even without the North Carolina cases, you're making the argument just that the inherent elements or just that the basic elements of the crime meet the attempted use of force against another person, aren't you? I do believe that. I think that there are certain crimes that are so... You look at the crime and... What are the elements here that you think, just tick them off, that you think meet the requirement of attempted use of force against a person? Well, you have the actual or attempted discharge of a firearm. That's unequivocally unleashing violent force. And then when you combine the requirement that the building be occupied and that the defendant be aware of that occupancy, I think that is sufficiently against a person. Okay, so what you're saying is that you can approach this in one of two ways. Number one, you can look at the bare elements, which is the discharge of a firearm with knowledge that it's occupied into a structure with knowledge that it's occupied by a person. Would meet the elements of the attempted use of force against a person. But you're also arguing in the alternative if you go into the North Carolina case law and look at the way in which it's been applied that you would arrive at that same conclusion. Yes. So, if... But if... Even if we didn't go along with you on that... Flesh out your harmless error argument here in the sense of what Judge Flanagan did in the sentencing procedure and the factors that she took into account and the conclusion that she arrived at that only this sentence was the one that would appropriately serve the factors in the end set forward in 3563A. In this case, there's no reason to believe when you look at the court's sentencing rationale that it would have arrived at a different sentence than it did. This court has never required a district court to say with specificity, had I calculated the guideline range differently, I would have imposed the same sentence. Certainly some judges do that, and when they do, that is a very clear articulation of their intent. But that's not what Savion Matute requires. And if you look at that case, for example, that was a case where the court, in its sentencing rationale, said that it absolutely believed that only a sentence of 36 months was appropriate. We have that sort of language here, and it's accompanied by a very thoughtful sentencing rationale. The language that the court... The court, first of all, rejected the possibility that a 38-month sentence was appropriate to satisfy the 3553A factors. And then later on it says, I think it's only a sentence of 65 months that sends the message that the defendant will be punished for his actions and his conduct, that he must respect the law, his dangers must be mitigated, and he cannot come back into this country. And accompanying that statement was a thoughtful discussion of things like the defendant's failure to learn from his prior interactions with the judicial system, that he went from, in the judge's words, a punk criminal at 16 years old to a drug dealer at 26. The court noted that there were multiple violations when he was in custody, and that suggested a continued inability to conform one's conduct with the rules. The court touched upon the defendant's gang membership, violence, lack of respect for others. And the court did address and consider the defendant's arguments, and at the end of the day, the court indicated that it had nothing, that there was nothing in this record of this defendant to give the court confidence that this defendant had changed. That is a very thorough, individualized assessment. And when it's accompanied by a statement that only this sentence is sufficient, it's appropriate for this court to give those words credence. But the defendant's argument is that if the guideline range had been calculated without considering this offense as a crime of violence, the range would have been 24 to 30 months. And his argument is that that big of a miscalculation seriously flawed the sentence. And had Judge Flanagan known that it was 24 to 30 months, do you really think that she would upwardly depart it at 65 months? I do. Based on what she said, based on her statement that this is the only sentence that's sufficient, I absolutely do. And what the assumed error harmlessness test requires is the first prong is that you have a consistent indication that this would have been the sentence of the court. I think you have that here. And then the next aspect of the assumed error harmlessness test is asking, had the defendant prevailed on his guideline range challenge and gotten a guideline range here of 24 to 30 months, would an upward variance to the sentence he got of 65 months have been reasonable? When considered in light of the factors of this case and the 3553A factors, and given the court's discussion of the defendant's past, of his infractions, her assessment of him under the 3553A factors, it is reasonable. Those are legitimate concerns that support the court's decision to impose a 65-month sentence. The court seemed to put particular emphasis on the age at which the instant offense was committed and on the fact that there had been prior lenient treatment accorded to the defendant, which apparently had done no good. Could you expand upon those two factors? Yes, in this particular case, the defendant had previously had encounters with the law, and it ranged from minor infractions, but it was a consistent indication of an unwillingness to conform his conduct. And where a defendant has been before a criminal judge and been sentenced and keeps coming back and doesn't change one's conduct, at some point, a court is going to say, enough's enough. And that's what this court here said. And he started at a young age. He started offending at 16. And that is an age where many judges  for rehabilitation, for a second chance. But when you have a defendant who started his criminal activity at 16, he continues that criminal conduct unbroken and is dealing substantial amounts of drugs by age 26. What was the amount again? Honestly, I... I think it was 28 grand. Yeah, thank you. And then you couple that with the ongoing memberships and gangs and then the nature of the offenses again. This defendant shot into a residence that was occupied by a female. That's a predicate offense, right? Yes, but that's part of his history leading up to this point. And his illegal return to this country and committing offenses. Now, if I could touch briefly to distinguish a handful of the cases that the defendant cited. Jaime's Jaime's in the Seventh Circuit. I want the court to note that that statute, the Wisconsin statute, did not have any requirement of proof on the government's part that the structure was in fact occupied. That's a significant distinction in the government's opinion. And for example, the child endangerment case. That, I agree that that sort of offense is a very serious offense, but that was an offense that could be committed through omission. By basically failing to attend to the needs of a child. This statute requires not omission, not passivity. It requires an intentional decision to discharge a firearm. That makes it very different. And we believe that the appropriate analysis here would be to align the Fourth Circuit with the Seventh Circuit, who has acknowledged that this type of offense is sufficient and does meet the Force Clause. But, if this court disagrees, that isn't a basis to reverse this particular case, given the District Court's very thoughtful discussion of the defendant and the harmlessness and the assumed error analysis that exists in the Fourth Circuit. And if there are no further questions, I ask that you affirm the judgment of the District Court. Thank you, Ms. Fritz. Mr. Brignac. Thank you, Your Honor. Just two points in rebuttal. Counsel sort of talked about, she did a survey, she looked at the North Carolina appellate cases to kind of get a sense of what the typical nature of this crime is. Appellate cases are cases that were worth appealing, which tend to mean, from the defendant's point of view, there were cases with higher than normal sentences, with extreme punishment, which really self-selects for more extreme conduct. So, I do not think... I don't understand that, because that's what we've always done. It does, you know... I mean, I don't understand how looking at the appellate case law of the state's highest court is somehow a distorted inquiry. It's the best we have to go by, because the state's highest court has the final word on what state law is. And thank you, Your Honor. Thank you for letting me clarify. Yes, the elements of the crime, that is the North Carolina court's 100% their prerogative. I'm just saying, trying to make a sort of factual survey. If you look at the camp from the Supreme Court, you know, that was about categorical versus modified categorical. But there you had a case where California burglary lacked the element of breaking it. And the Supreme Court did not even entertain the notion, even though I think common sense may tell us this, that the majority of... There are other cases that have surveyed state appellate cases. And the Supreme Court in Day's Camp alluded and cited to, I think it was the California appellate case in elucidating the nature of a crime. And so, you know, it seems to me you're asking us to take away one of the kind of tools that we've always employed in trying to determine the nature of a particular offense, which was to inquire of the state's appellate court. In your honor... The highest appellate court. Yes. And so I would only say to Camp, we agree 100%. It's the elements of the crime. In that case, the California crime lacked breaking as an element. That ended the inquiry. Just like the lack of force against the person, threat, or attempt ends the inquiry here. Can I just ask you just a simple old question. How can the discharge of a firearm into an occupied dwelling with knowledge that the dwelling is occupied? How is that not an attempted use of force against a person? You're discharging a firearm into a dwelling with knowledge that the dwelling is occupied. And particularly if you ask what the heartland of it is, whether you go at this through the elements alone, or whether you consult the North Carolina case law, at some point, common sense has to enter in. May I answer? Just, you know, in the case of that hypothetical statute where there's knowledge as opposed to recklessness, I think Chief Judge Traxler's hypothetical at the beginning. There's no element that you intend the bullet come near a person that the bullet actually come near a person or that the person in the building have any awareness it's fired. And so based on those elements, Your Honor, that's how I can say that it is not that sort of statute. And so for the reasons given in our brief, we believe that there was significant procedural error and that the error is not harmless on this record. So we ask this case be remanded so Judge Flanagan can re-sentence the defendant with the properly calculated guidelines. When you say attempted use against a person, you're putting a gloss on the statute because where does it, on the guidelines provision, because where does it say that with knowledge on the part of that person? It doesn't say that. You've just, you've added a provision or you've added an additional clause to the guidelines provision. It doesn't say what you just said. It doesn't require knowledge on the part of that person. It can be just as deadly whether the person knows about it or not. If the bullet strikes the person or hits the person, it doesn't matter whether the person had knowledge that someone was going to shoot them. If you shoot somebody out of a dark alley, you're still guilty of the crime even if the person is not aware before they're actually being shot. I mean, you're adding stuff. Yes, and I would only say just briefly in response that as the Fifth Circuit said, I think really went into the language in Vargas Duran, both the word use in the statute but more critically the word attempt and the word threat and they go into it and they go into the Black's Law definition of attempt and threat. That's where the intent comes in, Your Honor. That's what makes it specific intent. You cannot recklessly attempt. So I respectfully think I'm not reading that into the statute that's inherent to the words attempt, threat, and though there's a bit of a circuit split on the point, use. Thank you very much. Thank you. We'll come down and agree counsel and then go into
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Henry F. Floyd